## AMERICAN RY. EXPRESS CO. v. MAGNOLIA FISH & OYSTER CO. (No. 942.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 1, 1923.)

**1. Carriers ⊙⇒196—Burden on carrier to show shipment erroneously classified.**

·A carrier claiming remaining unpaid charges because of its agent's undercharge for a shipment has the burden of showing by a preponderance of evidence that the shipment was erroneously classified by its agent as was claimed by it.

**2. Carriers ⊙⇒196—Whether melons were to be classified for charges as a vegetable or a fruit held a question of fact.**

In view of the Interstate Commerce Commission tariffs in evidence, *held*, that whether melons were to be classified for charges by a carrier as a vegetable or a fruit was question of fact.

**3. Carriers ⊙⇒196—Burden of proving quoted rate on melons by carrier's agent was wrong not sustained.**

In a suit for remaining charges for watermelons, based on an alleged erroneous classification thereof under the Interstate Commerce Commission tariff by an express agent, *held*, that the burden of proof on the express company to show that the quoted rate was wrong was not sustained.

Appeal from Harris County Court; Roy F. Campbell, Judge.

Action by the American Railway Express Company against the Magnolia Fish & Oyster Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, for appellant.

Heidingsfelder's, of Houston, for appellee.

O'QUINN, J. Suit by appellant against appellee to recover from appellee the sum of $142.38, which appellant alleged was due as remaining charges on a shipment of a carload of watermelons shipped from Brownsville, Tex., to Houston, Tex., on June 6, 1919. Appellee applied to appellant's agent at Brownsville for carload rates on watermelons from Brownsville to Houston, and was quoted a rate of 92 cents per 100 pounds. the same being the vegetable rate. After getting the rate, appellee bought the melons in Mexico, and brought them over to the Texas side, loaded them into the car furnished by appellant, and they were shipped to Houston, where appellee paid the freight bill at 92 cents per 100 pounds, as quoted him by appellant's agent at Brownsville. Later, demand was made by appellant upon appellee to pay the alleged remaining unpaid charges, which appellee refused to do, and this suit was filed July 26, 1920, in the justice court. precinct No. 1, Harris county, Tex., where judgment was against appellant, and it appealed to the county court at law No. 2 of Harris county, where, in a trial before the court without a jury, judgment was also against appellant; hence this appeal.

The only question in the case is as to the proper classification of watermelons for carrying charges. Appellant contends that their classification as vegetables by their agent at Brownsville was error, and that they should have been classed as and have taken the rate for fruit, which was $1.48 per 100.

[1] The burden of proof was on appellant to show by a preponderance of the evidence that the shipment was erroneously classified.

[2, 3] The Interstate Commerce Commission tariffs were in evidence. In the freight classification there were no specific classifications of any fruits or vegetables, other than when named in crated or boxed quantities. Supplement No. 1 to Interstate Commerce Commission No. 1043, § 6, quoted carload rates on vegetables, except lettuce and spinach, or mixed with lettuce and spinach, Brownsville to Houston, at 92 cents per 100 pounds. It did not specify what would be known or accepted as vegetables, but simply quoted rates on "vegetables" in carload lots. Watermelons were not named in any of the schedules. Neither were any fruits or vegetables, except when specified in crated lots, other than the quotation on carload lots above quoted. So it then became a question of fact as to what classification watermelons should take. Only two witnesses testified on this point, C. N. Hill, appellant's agent at Brownsville, and W. H. Rohrer, assistant manager of appellant.

C. N. Hill, witness for plaintiff, testified:

"I am agent for the American Railway Express Company at Brownsville, Tex. I held that same position on June 6, 1919. * * * I remember the shipment inquired about, because of the fact that it was the only shipment of melons that we ever handled out of Brownsville by express. Mr. Genatempo came into the office, and, I believe, asked the rate, and I quoted him the 92-cent rate. That was the only carload rate we had on vegetables. He later came back and asked me to order a car for him to ship the melons in, which I did. I believe he bought the melons in Mexico and brought them across, and they were loaded right there across opposite our office. When Mr. Genatempo asked me the rate, I quoted him this 92-cent rate, which was the rate that applied on a carload of vegetables. I did not find any tariff that applied to carload shipments of watermelons. I don't believe they are specified.

"At the time of this shipment in question, I had been in the express business for about 18 years. I couldn't say offhand just how long I had been agent for the express company and quoting rates on shipments to shippers. At that time I had been at Brownsville for about a year. These tariff sheets which I have here are the tariffs I used in quoting the rate to the ship-

per of these melons. This first sheet is Interstate Commerce Commission No. 1043, dated January 1, 1919, and supplement to No. 1 to I. C. C. 1043, dated May 7, 1919, which quotes carload rates on lettuce and spinach in straight or mixed carloads, minimum weight 17,500 pounds, vegetables except lettuce and spinach in straight carloads or mixed with lettuce and spinach minimum weight 20,000 pounds. This tariff quotes a rate on both specific commodities, Brownsville to Houston, 92 cents per 100 pounds. The rate on vegetables and on lettuce and spinach is the same, only the minimum is less. Lettuce and spinach has a minimum weight of 17,500 pounds, and vegetables has a minimum weight of 20,000 pounds. As stated, this tariff gives a rate of 92 cents, and that is the rate I quoted on this carload of watermelons.

"The tariff provides for a second-class rate on all commodities that are not specified in the other tariffs. On page 14 of Exhibit D, it shows 'Freight Classification.' Under 'Rules,' it says: 'Second-class rates are applicable to commodities herein classified as second class, and to all articles of food or drink except as herein otherwise provided.' There is not anything else in this exhibit which I considered applicable."

Cross-examination:

"At the time of this shipment, I had been acting as agent for the express company at Brownsville for something over a year. I had, however, been engaged in the express business at other points in Texas for the express company for a number of years. I had been in that business for 17 or 18 years. * * * When Mr. Genatempo applied to me for a rate on a carload of watermelons from Brownsville to Houston, I examined this tariff sheet, and quoted him a rate from this Exhibit B, which reads: 'Sec. 6. Carload rates named in this section apply on lettuce and spinach in straight or mixed carload lots, minimum weight 17,500 pounds. Vegetables, except lettuce and spinach, in straight car lots, or mixed with lettuce and spinach, minimum weight 20,000 pounds. From Brownsville, Mercedes, Mission, and San Benito, to Houston, 92 cents.' That is the rate I quoted him. I thought that was the correct rate, and believed it was the correct rate until I got word from a source higher up, complaining about there being an undercharge. At the time I quoted that rate I had in my possession all the schedules and tariffs and sheets that have been introduced in evidence this morning, to which I could refer in determining the rate, and to the best of my ability at that time I quoted the correct rate—92 cents per 100 pounds. * * * In regard to how I arrived at this rate of $1.48 on watermelons, I will say that, if the tariff does not specify a particular commodity, then we have to go back to the rules and class it under a food or drink, which provides for second class. If the commodity is specified, there is a particular rate covering it. If the commodity is not specified, then we classify it as a food or drink, if it is in that commodity. This $1.48 rate classifies it as a food or drink. The classification by which you reach a rate of $1.48 between Brownsville and Houston is not based upon any classification respecting fruits or vegetables,

but a general classification of foods and drinks. Included in that food and drink list would be all commodities of that class that are not specified in this particular tariff. The list shown on page 4 of Exhibit A is the list from which I arrived at the conclusion that watermelons were not included in the 92-cent rate. I did not make the conclusion that because watermelons were not included in that list they should come under the head of fruit and drink. The general auditor did that. In regard to whether in the absence of orders from the general auditor, with these tariffs before me as they were at that time, I would not conclude that the rate of 92 cents on a carload of watermelons was wrong, I will say there wouldn't be any further instructions. I would have billed the shipment at that rate and would have had nothing further to do with it until it reached the auditor's office. * * *

"I don't remember what time of the day it was that Mr. Genatempo applied to me for the quotation of this rate. It was before he had assembled the melons for shipment. After I quoted him the rate, he went away and came back later, and told me to order the car for him. I don't recall how long it was after I quoted Mr. Genatempo the rate until I got the car for him, but it was probably two days. I don't recall the details of the transaction. Those melons were shipped without icing. They were just shipped loose in a baggage car. They were not in a refrigerator car. I consulted all the tariff sheets I had in my possession at that time that appeared to be applicable in determining that rate. I had all of the sheets in my possession that have been introduced in evidence. I don't recall whether I quoted that rate two days before the shipment was made, but it was some time before. Mr. Genatempo would have had time to buy the melons after I quoted the rate."

W. H. Rohrer, witness for plaintiff, testified:

"I am assistant manager of the American Railway Express Company at Houston. I have been with the express company for 19 years. I am a rate man for the express company and quote rates. I have had considerable experience with express rates. I have had experience in quoting rates on shipments of watermelons in Texas. I know what the general custom is in the express business and in the trade connected with watermelons as to how watermelons are classified. The general custom is to classify watermelons as a fruit. I have studied botany, and I know that botanists classify watermelons as a fruit. In botany they classify all plants that produce the fruit from the flower, as the ripened ovary of the flower, a fruit.' Other plants, such as the cabbage, for instance, that grows the fruit from the leaf, or the potato from the root, are classified as vegetables. Under that classification the watermelon, being the ripened ovary of the flower, would be a fruit, the same as an apple or cherry. It is a fact that some express tariffs specify watermelons separately by name from vegetables. I did not have anything to do with this particular rate in question here. I would say that under the general classification that commodities not specifically named in the

tariffs are given the second-class rate, and that watermelons classified as a fruit would be given this second-class rate."

Cross-examination:

"I said that I learned in botany that any ripened ovary forming from a flower was a fruit. That would make cucumbers, cantaloupes, tomatoes, beans, and peas fruits. That would leave as vegetables such things as potatoes, cabbage, lettuce, spinach, endive, and all of those things that grow from the roots or form their product from their leaves. Anything that blooms and has a ripened ovary is a fruit. In regard to whether the express company has been shipping tomatoes all the time as vegetables, I will say they have special rates on tomatoes, and they are usually called— in a good many places they are specified as vegetables. I don't know as I ever saw tomatoes specified as a fruit. Cantaloupes are not specified as a fruit. They are always specified as melons. I don't know that I ever saw cucumbers specified as a fruit. Cucumbers are mentioned in this list of estimated weights on crated articles. That gives everything that the tariff might be in effect on. It is not mentioned in the 92-cent tariff. I would say that a barrel full of watermelons would be a barrel full of fruit. A crate of tomatoes would be a crate of fruit if there wasn't a tariff effective on tomatoes. That would be the correct classification. Onions would be classified as a vegetable. According to botany, beans and peas are fruit. If I was looking for a rate on peas and beans, if I didn't find them specifically classified, I would think the above classification would be correct. If I didn't find them classified as vegetables, I would give them a fruit rate. * * * With respect to this rate of 92 cents on vegetables, except lettuce and spinach in straight carloads, minimum weight 20,000 pounds, that is a commodity rate less than second-class, and the third-class rate does not apply, because that is on printed matter alone, and is a cheaper rate than second-class. In Exhibit D, express classification No. 26, effective September 10, 1918, you do not find watermelons specially classified. This classification gives green vegetables not otherwise specified, and gives the second-class rate on them. According to my construction, that provision as to lettuce and spinach in straight carloads could apply to nothing but shipments classified as vegetables. That would be probably applicable to anything properly classified as vegetables. I don't find tomatoes, peas, beans, or cantaloupes classified there. If a man wanted to ship a carload of black-eyed peas from Brownsville to Houston, he would have to pay the second-class rate, according to the way I construe that tariff—at least, that is the botanical definition—but in commerce it is possible that black-eyed peas would be classified as a vegetable. As a rate expert, I would classify black-eyed peas, beans, and peas as vegetables, because it is cooked and eaten. So far as an express rating is concerned, I would classify tomatoes as vegetables. It is cooked, but you never cook a watermelon. In regard to whether I would call a thing a vegetable because it is cooked, I will say that it is according to the botanical definition. There is

a different way of producing the fruit. Sometimes it is by the flower, some by roots and some by leaves. I don't know whether a fig blooms. I don't know just how it produces its fruit. I cannot remember ever seeing a fig tree bloom. According to the botanical definition, a carload of cucumbers would be a carload of fruit. I would classify a carload of cucumbers according to the way my tariff classified them. I couldn't say I would put them down as a fruit, if I didn't find them specially designated, because cucumbers are in use the same as peas and beans. I have seen cooked cucumbers. That is not unusual. Lots of people fry them and preserve them. I would classify cucumbers as a vegetable for commercial purposes, but according to the botanical definition you could classify them as much a fruit as an apple or pear. In regard to whether, after all, it is more the character of the thing and the way it is to be handled and dealt with as to whether it is technically a fruit or a vegetable, I will say that we have a tariff that specifies just what commodities are to be covered."

Redirect examination:

"* * * If the tariff names the very article that is to be shipped, the distinction between a fruit and a vegetable is not at all material. If I had a shipment of a carload of pumpkins, while it is a fruit botanically, I would classify it as a vegetable. You cannot eat it any other way than cooked, and I could classify it as a vegetable, and in that case the second-class rate would apply, unless there is a special tariff naming it. The second-class rate would be $1.48. In other words, it don't make any difference whether you call it a fruit or vegetable; if it is not specified in this tariff, it would take the $1.48 rate. * * * Under the classification of vegetables would come beans, peas, potatoes, sweet potatoes, cabbage, and anything you would call vegetables commercially, those that would come under that heading, except lettuce and spinach. Under lettuce and spinach it gives a minimum rate of 17,500 pounds, and under vegetables and spinach and lettuce mixed with vegetables it gives a minimum weight of 20,000 pounds. I would not classify tomatoes under that heading. It does not specify them, and I would give them the second-class rate instead of that lower rate, even though they might be a vegetable commercially. This provision that was read here a little while ago with reference to crating does not have anything to do with the vegetable rate; it is simply an estimated rate that is used on those articles. You could classify okra under this. It is considered a vegetable, whether it is the product of a flower. It would take that rate in carloads. I would class okra that way because it is cooked. It is in the same class as cabbage or peas or beans, as far as eating is concerned. It is handled and sold and eaten as a vegetable."

After all, the question presents the matter of the interpretation of classified tariffs. Hill, with about 18 years experience as agent, actively construing and applying the tariffs, interpreted the rate to be 92 cents as applying to vegetables by the carload. He

says that he quoted what he thought was the correct rate, and believed it was the correct rate until he got word from a source "higher up," complaining about there being an undercharge; that at the time he quoted the rate he had in his possession and consulted all of the schedules and tariff sheets introduced in evidence, and said:

"To the best of my ability at that time I quoted the correct rate—ninety-two cents per hundred pounds."

He further said:

"I did not make the conclusion that because watermelons were not included in that list they should come under the head of food and drink; the general auditor did that."

The effect of his testimony as a whole, as we construe it, is that he still holds the opinion that the rate quoted by him was correct, but that the claim of error comes from "higher up." The witness, Rohrer, assistant manager of appellant, who has had about the same length of time experience in the same business as Hill, says, mainly from a "botanical" standpoint, that the rate quoted was wrong.

As the burden of proof was on appellant to show by a preponderance of the evidence that the wrong rate was quoted, in the state of the record, we cannot say that it has met that burden.

The judgment is therefore affirmed.